CR-22-01032-PHX-JJT, August 23, 2022

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **United States of America**, | ) | |
| | ) | |
| Plaintiff, | ) | CR-22-01032-PHX-JJT |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | August 23, 2022 |
| **Fredy Gutierrez-Valencia**, | ) | 10:36 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**DETENTION HEARING**

A P P E A R A N C E S

For the Government:
        **BRET ALLEN DAY, ESQ.**
        U.S. Attorney's Office (Phoenix)
        40 N. Central, Ste. 1800
        Phoenix, AZ 85004-4408
        602.514.7500

For the Defendant:
        **MILAGROS A. CISNEROS, ESQ.**
        Federal Public Defender (Phoenix)
        805 W. Adams St., Ste. 201
        Phoenix, AZ  85007
        602.382.2700/(fax)602.382.2800

Transcriptionist:
**Elaine Cropper**
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 35
Phoenix, Arizona  85003-2150
602.322.7245

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

**P R O C E E D I N G S**

COURTROOM DEPUTY:  Case number CR 22-1032, *United States of America v. Fredy Gutierrez-Valencia*, before the Court for a detention hearing.

MR. DAY:  Good morning, Your Honor.  Brett Day on behalf of the United States.  Seated with me at counsel table is Special Agent James Cobble of ATF.

THE COURT:  Good morning.

MS. CISNEROS:  One moment, Your Honor.

THE COURT:  Oh, dear.

Thank you, counsel.

MS. CISNEROS:  Good morning, Your Honor.  Milagros Cisneros appearing on behalf of Fredy Gutierrez-Valencia, who is present.  He's in custody at this time.

I would also like to acknowledge the presence in the courtroom of Mr. Gutierrez-Valencia's mother, Carmen Rowley, and his stepdad, Mark Rowley, and Mr. Gutierrez-Valencia's niece.

THE COURT:  The Court recognizes the presence of your family members.  How nice that your family was able to be here today for you, sir.

We are here for a detention hearing with regard to the indictment filed on August 16, 2022.  Go right ahead, Mr. Day.

MR. DAY:  Thank you, Your Honor.  I intend to proceed

CR-22-01032-PHX-JJT, August 23, 2022

by proffer but, obviously, Agent Cobble is here if the Court should have any questions.

The government is seeking detention in this matter, Your Honor, based on flight and dangerousness.

As it relates to flight, the Government believes that the defendant is a flight risk given his numerous ties to Mexico. He does have multiple trips to Mexico during the charged period. I believe we've identified at least 25 trips to Mexico that occurred within three days of his purchase of firearms here in the United States.

As indicated in the Pretrial Services Report, the defendant has a fiancé or girlfriend who lives in Mexico who he says that he frequently visits. In addition to that, Your Honor, in -- while the special agents were executing the search warrant at Mr. Gutierrez-Valencia's residence, they had an opportunity to speak to his mother and his mother indicated that the family does have real estate, I believe one or two condos, multiple condos, in Mexico that the family owns.

So for those reasons, Your Honor, and in addition, you know, he lives with his parents so he doesn't have -- the home is mortgaged to his parents. He doesn't have the significant financial tie of a home here in the United States or here in Arizona such that that would be a motivation to remain in the United States or not flee from prosecution.

So for those reasons, we believe that the defendant

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

is a flight risk.

As to dangerousness, Your Honor, we believe that the defendant has ties to the Mexican cartel and that is where these weapons were destined, given his multiple ties to Mexico. The indictment alleges a total of 74 firearms which were purchased over a roughly 22-month period. The defendant spent I believe roughly $54,000 on those firearms during that period.

His income during that period was -- in 2020 I believe roughly I believe $34,000 and in 2022 -- excuse me, 2021, roughly $15,000.

Of great concern to the United States, in addition to the firearms, is he purchased, I want to say, roughly $35,000 in firearms accessories. Those accessories included, Your Honor, ballistic grade body armor, vests, laser telescopes, laser scopes for the firearms and, incredibly, 50 pairs of handcuffs were also purchased.

Your Honor might note that the indictment only alleges firearm purchases up to about February of 2021. After that time, he obtained a concealed carry weapons permit. And the significance of that, Your Honor, is that in obtaining a concealed weapons permit, it allows him to purchase firearms without having to go through a background check. So agents aren't alerted when he purchases firearms.

Now, in previous interviews with Mr. Gutierrez-Valencia, we were aware that he was engaging in

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

transactions online at websites such as armslist.com and gunbroker.com.  When the agents looked into gunbroker.com, they found that Mr. Gutierrez-Valencia had engaged in approximately 199 separate firearms transactions which were subsequently abandoned.

He was attempting or setting up the purchasing of bulk AK-47 rifles.  The total dollar amount from those that we identified were -- was roughly $109,000 in firearms.

Now, the investigation revealed that those transactions were abandoned and as the agent has explained to me, oftentimes what people will do on gun brokers, a seller and a buyer will meet up and they will engage in a transaction and then take their conversation off line, therefore, skirting the fees that GunBroker -- that GunBroker collects for facilitating that transaction, but it also skirts the fact that the firearms would have to be shipped to an FFL which then the paperwork would be generated.

The typical process is if two people meet on line within GunBroker, they engage in a transaction and complete that transaction through GunBroker, that firearm has to be shipped to a federal firearms licensee in the receiving district where the seller resides and then the normal paperwork that we see has to be filled out, that FFL.

When two individuals meet online -- in this particular case we believe is occurring and then they agree to

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

take their conversation or their dealings offline, they don't have to go through that process and they also skirt the billing, if you will, of GunBroker.

So for those reasons we believe that there is far more firearm transactions out there. As we indicated, we identified 199 of those abandoned transactions. And as I indicated, a lot of them were attempts at bulk purchases, 20 to 30 AK-47 rifles.

In addition to the investigation into the firearm purchases themselves, ATF conducted a financial analysis of Mr. Gutierrez-Valencia's accounts. Over the relevant period of the firearm transactions, he had total deposits into one account of over $269,000. Roughly I believe $180,000 of that was cash deposits from an unknown source.

The other remaining was the amounts from his income and then he also received I believe $20,000 tax return. He ha multiple accounts. He had an additional account where it was also receiving a smaller amount, I believe it was roughly $35,000 to $36,000 in unaccounted cash deposits, which were then moved into the primary account.

He was wiring -- don't know the complete theory behind this but he was wiring significant amounts of money to himself to and from Mexico. I believe it was in the neighborhood off $100,000 that he was wiring to and from himself in Mexico. And as I indicated, out of those 74

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

purchases that we identified, he was traveling to Mexico within three days of that purchase.  And then we also have the corresponding financial information that relates -- that corresponds with his travel to Mexico also.

So for those reasons, Your Honor, we do believe that the defendant is both a flight risk and a danger based upon all of those facts and circumstances.  Thank you.

THE COURT:  Thank you.

And response?

MS. CISNEROS:  Yes, Your Honor.  Thank you.  I find it interesting that the Government -- the language used by the Government today, theories.  He talked about a theory, Mr. Day talked about a theory.  Also I find it interesting that they indicate that they believe there are far more transactions that were somehow consummated in another way.  I think also there's a belief that Mr. Gutierrez-Valencia has ties to a Mexican cartel but I don't see proof of these beliefs.  But, Your Honor, certainly those -- that information can be later addressed perhaps in the crucible of cross-examination in a trial.  But at this point in time, Your Honor, as you know, the weight of the evidence is the least important of the factors for you to consider.

My client is a life-long resident of Arizona, living here since he was six or seven years old.  He's a United States citizen.  He has no criminal history.  He was tested for drugs

United States District Court

and there were no drugs in his system.  There's a reference to a passport in the Pretrial Services Report.  My understanding is that his mother believed that it was in her safe but my understanding is also -- and, of course, Mr. Day can correct me if I'm wrong, he had it on his person at the time of his arrest so the Government actually has his passport.

The house was searched.  There were no guns in the house.  No guns in his car.  He was arrested while he was parked in his driveway.

I understand some of the conjecture that has been provided here, but I believe that there are ways that the Court -- conditions that the Court can fashion to allow Mr. Gutierrez-Valencia to remain -- to be released.  He -- certainly we would be amenable to ankle monitoring.  And I also want to address this issue of his fiancé.  His entire effort for the past couple of years has been to bring her and her three children here to the United States.  He reported to me that they got her a Mexican passport for her and for her three children about four or five months ago with the understanding that that is the first step that they need in order to be able to come the United States to live.

He sends a substantial amount of his income to his fiancé which is supporting her.  The loss of that U.S. income for him to just take off and go to Mexico to live with her, the loss of that income would be devastating.  She has three

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

children.  They are not going to go on the run with him.

So, Your Honor, I just wanted to address that matter regarding -- which also, by the way, explains his frequent travel to Mexico.

And the Court can order him and should order him not to go to Mexico.  Certainly he's amenable to that.  They are still working very hard on trying to get her to come to the United States legally.  They he certainly don't want her to be here legally.  But I would venture to say, Your Honor, that, to me, this is a fairly clear situation where there's no criminal history.  No drugs.  Yes, there is travel.  But he doesn't have a passport any more and he has every motivation to be here in the United States with his fiancé.  He has a place to live.  He is currently supporting his -- I think it was indicated in the Pretrial Services Report.  His sister recently passed away and he's assisting with supporting those children as well.  So his significant ties here in Arizona, I would venture to say much more significant even though there is a fiancé that he has in Mexico.

Again theories and beliefs are all fine and good and perhaps they will be developed more in the course of the case, but at this point in time, Your Honor, I think that based on what he's been indicted on and on the -- his history and characteristics, I think released with conditions, whatever you want to fashion, to ensure that he does remain in the United

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

States, release.  Thank you, Your Honor.

THE COURT:  Thank you very much.

Any reply?

MR. DAY:  Your Honor, I just wanted to touch on the passports.  The agent advises me they did locate two U.S. passports in the defendant's name and multiple Mexican passports in his vehicle.  However, those were not seized. They remained on the scene.  There was pictures taken but we do not have any of his passports.

THE COURT:  All right.

There being no further information then, the matter is found deemed submitted for my decision.  I'll be making a decision as quickly as I possibly can.  Thank you very much.

MR. DAY:  Thank you, Your Honor.

MS. CISNEROS:  Thank you, Your Honor.

(Proceedings concluded at 10:50 a.m.)

United States District Court

CR-22-01032-PHX-JJT, August 23, 2022

C E R T I F I C A T E

I, ELAINE M. CROPPER, court-approved transcriber, certify that the foregoing is a correct transcript, to the best of my skill and ability, from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 29th day of August, 2022.

s/Elaine M. Cropper

_____

Elaine M. Cropper

United States District Court